**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2371
_____

UNITED STATES OF AMERICA

v.

RALPH MAXWELL,
            Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-22-cr-00127-001)
District Judge: Honorable R. Barclay Surrick

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 6, 2024

Before: JORDAN, HARDIMAN, and PORTER, *Circuit Judges*.

(Filed: September 9, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Ralph Maxwell appeals his judgment of sentence for bank robbery and attempted robbery. He argues for the first time on appeal that the District Court erroneously accepted his guilty plea and failed to resolve a factual dispute. His first argument does not surmount the substantial obstacle of plain error review and his second argument was waived in the District Court. We will affirm.

I

Between February and March 2022, Maxwell robbed three banks in the Philadelphia area. Each time, Maxwell slipped the bank tellers a fanny pack and a note demanding money. At the third robbery, Maxwell's note read: "[T]his is a robbery, quickly and quietly put twenty thousand dollars in the bag. No dye, no tracer bills, no alarms until I'm gone or I will shoot the first person behind me . . . . Please don't let anyone die." App. 42. He then warned another employee not to "play with [him], while holding up his jacket and displaying" a walkie-talkie on his hip, which the employee "believed to be a firearm." App. 43.

A week later, Maxwell attempted to rob a tow truck driver at gunpoint. Maxwell opened the driver's door, pointed a gun at him, and demanded: "Give me the money or I'll shoot you." App. 45. After the driver kicked him, Maxwell fired a shot that struck the driver in the right hand and grazed his neck. As Maxwell fled, the driver flagged down police officers and received medical treatment. Maxwell was arrested and indicted for two counts of bank robbery, *see* 18 U.S.C. § 2113(a), one count of armed bank robbery,

*see* 18 U.S.C. § 2113(d), and one count of attempting to interfere with interstate commerce by robbery in violation of the Hobbs Act, *see* 18 U.S.C. § 1951(a).

Maxwell pleaded guilty to four counts without a plea agreement.[1] The Presentence Investigation Report (PSR) calculated Maxwell's final advisory Guidelines' range as 135 to 168 months' imprisonment. That included an enhancement for causing "permanent or life-threatening bodily injury" to the truck driver, who reported that the bullet pierced three fingers, causing loss of feeling and function in his right hand. U.S.S.G. § 2B3.1(b)(3)(C).

Maxwell did not object to the PSR's Guidelines calculation, but he requested a downward variance to a 10-year sentence and objected to the PSR's finding that the driver suffered permanent or life-threatening bodily injury. App. 73.  Maxwell's counsel conceded that the driver's degree of injury "ha[d] no impact for purposes of [Maxwell's] sentencing guideline range," and "only raise[d] that [issue]" because it might affect "the Bureau of Prisons' evaluation of [Maxwell's] security level" and how he might be "housed within the Bureau of Prisons' system." App. 72, 74.

Unmoved by Maxwell's request for leniency, the District Court sentenced him to the top of the Guidelines range (168 months' imprisonment) followed by five years' supervised release. The District Court cited Maxwell's criminal history of robbery and drug possession and the "very, very serious" nature of his crimes. App. 119–20. The

---

[1] Maxwell was indicted on a fifth count under 18 U.S.C. § 924(c)(1)(A)(iii) for using and carrying a firearm during and in relation to a crime of violence. The Government moved to dismiss the charge, however, which the District Court granted.

District Court did not address the extent of the driver's injury before imposing sentence, and Maxwell filed this timely appeal.

II[2]

A

Because Maxwell did not object when the District Court imposed sentence, we review only for plain error. *See United States v. Knight*, 266 F.3d 203, 206 (3d Cir. 2001). Maxwell claims the District Court plainly erred in accepting his guilty plea to armed bank robbery under 18 U.S.C. § 2113(d) because he did not possess a "dangerous weapon or device" during the third bank robbery. *See United States v. Cefaratti*, 221 F.3d 502, 509 (3d Cir. 2000) (requiring a factual basis to support a guilty plea). He contends the District Court's error was plain because a conviction for armed robbery "requires use of a real or at least 'look-alike' dangerous weapon" such as a toy gun or replica, Maxwell Br. 19 (cleaned up), and his walkie-talkie was not a "dangerous weapon or . . . imitation 'device,'" Maxwell Br. 3 (quoting 18 U.S.C. § 2113(d)). The error prejudiced him, he argues, because his conviction under § 2113(d) permitted the District Court to sentence him to five years of supervised release—two years more than the statutory maximum for bank robbery under § 2113(a). He asks us to vacate his judgment of sentence and remand for resentencing subject to § 2113(a)'s statutory maximum.

Maxwell's arguments are unpersuasive. As we held in *United States v. Beckett*, a "weapon or device need not actually be capable of inflicting severe bodily harm or injury

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

4

upon another[,] . . . rather, a weapon or device may be considered to be dangerous if it instills fear in the average citizen creating an immediate danger that a violent response will follow." 208 F.3d 140, 152 (3d Cir. 2000) (quoting the district court's jury instruction). In that case, the defendant used common store-bought items—including a shoe box, masking tape, antenna, light, and wrapping paper—to assemble hoax bombs that he wore during several bank robberies. *See id.* at 143–45. Though none of these items was capable of inflicting harm, we held the hoax bombs were "dangerous weapons" under § 2113(d). *Id.* at 152.

For an error to be plain, it must be "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). One could credibly argue that *Beckett*'s reasoning applies to Maxwell's use of the walkie-talkie. Under *Beckett*, we do not consider solely whether the defendant's device was capable of inflicting harm or was a replica weapon, but whether the device was arranged and displayed in a manner that would instill fear of violence in a reasonable person. *See Beckett*, 208 F.3d at 152. Maxwell asserts that "the average citizen would not mistake the walkie-talkie for a gun," pointing to "security footage indicat[ing] he wore the walkie-talkie openly . . . to give the impression of a construction worker." Reply Br. 6–7.

Yet Maxwell admits "that [he] created the impression of a gun by *obscuring the walkie-talkie's appearance, i.e., keeping it under his jacket for all but an instant*." Reply Br. 7 (emphasis added); *see also* App. 43 (noting Maxwell "h[eld] up his jacket and display[ed] what that teller believed to be a firearm on [Maxwell's] hip"). Additionally, Maxwell threatened to "shoot the first person behind [him]," App. 105, so it was

5

reasonable for the bank teller "to take [Maxwell] at his word" that he had a gun and was willing to use it. *United States v. Wolfe*, 245 F.3d 257, 263 (3d Cir. 2001).

In sum, the District Court did not plainly err when it held that Maxwell's conduct supported a charge for armed bank robbery under 18 U.S.C. § 2113(d). So we will affirm the District Court's judgment of conviction on Count III.

B

Second, Maxwell argues that the District Court neglected its duty under Rule 32 of the Federal Rules of Criminal Procedure to "rule on the dispute[d]" issue of the truck driver's injury "or determine that a ruling [was] unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). He seeks remand for the District Court to resolve the factual dispute upon resentencing. He argues that this purported error prejudiced him because "[i]t is likely the district court would have exercised its [sentencing] discretion more leniently had it confronted the infirmities in the [driver's] claim of injury." Maxwell Br. 31.

We hold that Maxwell waived this argument when his counsel stated at sentencing that he "*only* raise[d]" the disputed issue of the driver's injury because it had the potential to affect the Defendant's Bureau of Prisons (BOP) assignment and security level. App. 72 (emphasis added). By raising the issue of the driver's injury exclusively for this narrow purpose, Maxwell "intentional[ly] relinquish[ed]" and "abandon[ed]" his argument that the District Court's failure to resolve the issue resulted in a higher sentence. *United States v. James*, 955 F.3d 336, 344 (3d Cir. 2020) (quoting *United States v. Olano*, 507 U.S.

725, 733 (1993)). And although we "strictly enforce[]" Rule 32, we have not eliminated the duty to object to a Rule 32 "procedural error when it becomes evident." *United States v. Dawson*, 32 F.4th 254, 268, 270 (3d Cir. 2022) (cleaned up). Here, counsel raised the matter of the truck driver's injury in the District Court only to the extent it might affect Maxwell's BOP security level and housing assignment. So it would be inappropriate for us to address his new argument that the Court's failure to resolve the issue adversely affected his sentence.

\* \* \*

For the reasons stated, we will affirm the District Court's judgment of sentence.